UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIE DANFORD,

                           Plaintiff,

v.                                               5:09-CV-0307
                                               (GTS/ATB)

THE CITY OF SYRACUSE; JOHN P. FAY;
FRED LAMBERTON; and UNNAMED
OFFICERS,

                          Defendants.

_____

APPEARANCES:                            OF COUNSEL:

OFFICE OF GILLES R. ABITBOL           GILLES R. ABITBOL, ESQ.
   Counsel for Plaintiff
121 Green Acres Drive
Liverpool, NY 13090

HON. MARY ANNE DOHERTY             JOSEPH R.H. DOYLE, ESQ.
Corporation Counsel for the City of Syracuse
   Counsel for Defendants
223 East Washington Street, Suite 300
Syracuse, NY 13202

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

         Currently before the Court, in this civil rights action filed by Willie Danford ("Plaintiff")

against the above-captioned individuals and municipalities ("Defendants") pursuant to 42 U.S.C.

§ 1983, is Defendants' motion for summary judgment.  (Dkt. No. 18.)  For the reasons set forth

below, Defendants' motion is granted.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Claims

Generally, liberally construed, Plaintiff's Amended Complaint alleges that, on or about

April 22, 2007, at or near 500 Delaware Street in Syracuse, New York, Defendants violated

Plaintiff's following civil rights in the following manner: (1) Defendant Officers violated his

rights under 42 U.S.C. § 1983 by falsely arresting him because he is African American and was

driving "a large SUV with chromed wheels in an area of town targeted by police"; (2) Defendant

Officers violated his rights under the Fourth Amendment and 42 U.S.C. § 1983 by unlawfully

searching his vehicle because he is African American and was driving "a large SUV with

chromed wheels in an area of town targeted by police"; and (3) Defendant City of Syracuse is

liable as a municipality because the violation(s) in question were caused by (a) a municipal

custom or policy of arresting individuals because they are African American, present in a certain

part of town and/or driving a large SUV with chromed wheels, (b) failing to train its officers

regarding the type of vehicle stop and arrest in question, (c) being deliberately indifferent to

training its officers regarding that stop and arrest, (d) failing to develop and review hiring and

training practices and policies to conform to constitutional standards, (e) failing to review

supervisory policies relating to citizen complaints, and/or (f) failing to procedurally investigate

citizen complaints.  (*See generally* Dkt. No. 11 [Plf.'s Amend. Compl.].)[1]  Familiarity with the

---

[1]      In his Amended Complaint, Plaintiff lists "intentional infliction of emotional
distress" as one of the injuries he allegedly suffered as a result of his alleged false arrest.  (Dkt.
No. 11, at ¶ 44 [Plf.'s Amend. Compl.].)  However, the Amended Complaint does not identify
that the tort of intentional infliction of emotional distress as one of the claims that Plaintiff is
intending to assert, nor does it allege facts plausibly suggesting either extreme and outrageous
conduct or severe emotional distress.  (*See generally* Dkt. No. 11.)  Moreover, in his opposition
papers, Plaintiff does not argue that he is attempting to assert such a claim.  (*See generally* Dkt.
No. 20.)  For these reasons, the Court does not construe Plaintiff's Amended Complaint as
attempting to assert a claim for intentional infliction of emotional distress.

factual allegations supporting these claims in Plaintiff's Amended Complaint is assumed in this Memorandum-Decision and Order, which is intended primarily for review by the parties.  (*Id*.)

### B.    Undisputed Material Facts

On October 31, 2011, in support of their motion, Defendants filed a Statement of Material Facts, containing specific citations to the record where each fact was established, in accordance with Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court.  (Dkt. No. 18, Attach. 1.)

On November 14, 2011 (the last day on which to file a response to Defendants' motion), Plaintiff filed an "Attorney Affidavit" in opposition to Defendants' motion.  (Dkt. No. 20.)  That affidavit neither constituted nor attached a response to Defendants' Statement of Material Facts. (*Id*.)  For example, the affidavit did not admit or deny each of Defendants' factual assertions in matching numbered paragraphs supported by a specific citation to the record where the factual issue arises, as required by Local Rule 7.1(a)(3).  (*Id*.)

The next day, a docket clerk from this Court contacted Plaintiff's counsel, and notified him that his response had omitted, inter alia, a response to Defendants' Statement of Material Facts.  Plaintiff's counsel advised the docket clerk that he was aware of the omission, which was caused by the fact that he did not have enough time to prepare a response to Defendants' Statement of Material Facts.  However, Plaintiff's counsel did not request an extension of time in which to rectify the omission.

Ordinarily, the Court *might* sua sponte scour any verified operative pleading that the plaintiff had filed (which would have the force and effect as an affidavit), in deciding whether or not the plaintiff has effectively denied certain of the defendants' supported factual assertions in their Statement of Material Facts.  However, here, Plaintiff has not personally verified his

Amended Complaint.  (*See generally* Dkt. No. 11.)[2]  Rather, his attorney has verified that

Amended Complaint himself pursuant to N.Y. C.P.L.R. § 3020(d)(3).  (Dkt. No. 11, at 8.)  Such

a verification does not automatically transform Plaintiff's Amended Complaint into an affidavit

for purposes of a motion for summary judgment.[3]  Rather, personal knowledge of the affiant is

required under such circumstances.[4]  While Plaintiff's counsel claims *second-hand* knowledge of

---

[2] Plaintiff's original Complaint, which *was* personally verified by Plaintiff, was superseded in all respects through the filing of Plaintiff's Amended Complaint.  N.D.N.Y. L.R. 7.1(a)(4); *see also Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") [citations omitted], *cert. denied*, 434 U.S. 1014 (1978); *accord, Shields v. Citytrust Bancorp*, Inc., 25 F.3d 1124, 1128 (2d Cir.1994); *Dluhos v. Floating and Abandoned Vessel*, 162 F.3d 63, 68 (2d Cir.1998); *Lomnicki v. Cardinal McCloskey Servs.*, 04-CV-4548, 2007 WL 2176059, at *6 (S.D.N.Y. July 26, 2007) ("[T]he filing of the Second Amended Complaint makes the initial complaint a nullity . . . .").

[3] *See Johnson v. Doe*, 00-CV-3920, 2001 WL 314618, at *1 (S.D.N.Y. March 30, 2001) ("Although a verified complaint may serve as an affidavit for summary judgment purposes, . . .  mere verification does not transform rhetoric, conclusions, and other non-admissible statements into admissible evidence."); *Alleva v. New York City Dept. of Investigation*, 696 F. Supp.2d 273, 278-79 (E.D.N.Y. 2010) ("The Complaint is not verified, however; it bears only the signature of Alleva's attorney, not the signature of Alleva himself, and Alleva's attorney does not attest to any 'personal knowledge' of the Complaint's allegations. 'Personal knowledge' is required under Rule 56(e)(1) . . . ."); *cf. Miltope Corp. v. Hartford Cas. Ins. Co.*, 163 F.R.D. 191, 193 (S.D.N.Y. 1995) ("Plaintiff's counsel apparently was following the practice in the New York State courts that permit the attorney to verify a pleading if the party 'is not in the county where the attorney has his office.' CPLR § 3020(d)(3). That practice has no applicability to verification of interrogatory answers under Fed. R. Civ. P. 33."); *Spinella v. Esperdy*, 188 F. Supp. 535, 541 (S.D.N.Y. 1960) (refusing to assign evidentiary value to complaint that was not verified by plaintiff but by his attorney, and to which no affidavit by alien or anyone else having any personal knowledge was attached).

[4] *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); N.D.N.Y. L.R. 7.1(a)(3) ("The record [on a summary judgment motion] . . . does not . . . include attorney's affidavits."); *Alleva*, 696 F. Supp.2d at 278-79 ("'Personal knowledge' is required under Rule 56 . . . ."); *cf. Johnson*, 2001 WL 314618, at *1 ("[M]ere verification [of a complaint] does not transform . . . non-admissible statements into admissible evidence [for purposes of a motion for summary judgment].")

the events in question, he does not claim *personal* knowledge of those events.  (*Id.*)  Moreover,

the Amended Complaint does not allege that Plaintiff's counsel was present at the time of the

events in question, sufficient to confer on him personal knowledge of those events.  (Dkt. No.

11.)  Indeed, if Plaintiff's counsel did possess such personal knowledge, he would likely not be

able to represent Plaintiff in this action, under New York Rules of Professional Conduct.[5]  As a

result, the Court declines to sua sponte scour Plaintiff's Amended Complaint in search for a

genuine dispute of material fact.  In any event, even if the Court were to do so, the Court would

find that any such sworn allegations contained in it are not sufficiently material to create a

genuine dispute of material fact with regard to the discrete facts asserted by Defendants in their

Statement of Material Facts.  (*Compare* Dkt. No. 18, Attach. 1 *with* Dkt. No. 11.)

  For all of these reasons, the Court deems admitted all of the facts set forth in Defendants'

Statement of Material Facts.  The most material of those facts are stated below.

  On or about Sunday, April 22, 2007, at approximately 4:55 p.m., on Delaware Street in

the City of Syracuse, Plaintiff was operating his 1994 Chevrolet Suburban and carrying his

---

[5]  *See U.S. v. De Angelis*, 490 F.2d 1004, 1011 (2d Cir. 1974) (Mansfield, J., concurring) (finding defense counsel's conduct violated ethical rules where he "voiced his personal knowledge of facts" of case); *Road Dawgs Motorcycle Club of the U.S., Inc. v. 'Cuse Road Dawgs, Inc.*, 679 F. Supp.2d 259, 281-82 & n.54 (N.D.N.Y. 2009) (Suddaby, J.) (finding that defense counsel could not have personal knowledge of facts giving rise to lawsuit, so as to tender affidavit, without becoming witness to lawsuit pursuant to Prof. Conduct Rules 3.4 and 3.7); N.Y. Prof. Conduct Rule 3.4(d)(2),(3) ("A lawyer shall not . . . in appearing before a tribunal on behalf of a client . . . assert personal knowledge of fact in issue except when testifying as a witness . . . [or] assert a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused . . . ."); N.Y. Prof. Conduct Rule 3.7(a) ("A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless: (1) the testimony relates solely to an uncontested issue; (2) the testimony relates solely to the nature and value of legal services rendered in the matter; (3) disqualification of the lawyer would work substantial hardship on the client; (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or (5) the testimony is authorized by the tribunal.").

seventeen-year-old niece, Sheaona Elmora, in the passenger seat with the windows of the vehicle down and music playing inside.  After seeing the lights of a City of Syracuse Police vehicle behind him, Plaintiff pulled his truck over.

City of Syracuse Police Officers John P. Fay and Fred Lamberton exited their patrol car. Plaintiff produced his driver's license, vehicle registration, and insurance card and handed them to one of the Officers.  That Officer asked Plaintiff for his Social Security number and weight measurement.  Plaintiff did not provide the information.

Officer Fay told Plaintiff to exit the truck and arrested him for violating Section 40-16(b) of the City of Syracuse Noise Control Ordinance.  Officer Fay handcuffed Plaintiff at the rear of the truck, and placed Plaintiff in the rear of the patrol car.[6]

Ms. Elmore exited the truck and moved to its rear, toward the Officer who had arrested and handcuffed Plaintiff.  Officer Fred Lamberton stopped her advance and pushed her back, while she challenged the Officers regarding their arrest of Plaintiff.  At this time, a crowd began to form around the scene.

The Officers subsequently removed Plaintiff from the patrol car, removed his handcuffs, returned his driver's license, vehicle registration, and insurance cards, issued him Appearance Ticket DR#07-219798 for a City Noise Ordinance violation, and told him where and when to go to court to appear.

Plaintiff responded to Appearance Ticket DR#07-219798, and appeared before City of Syracuse City Court Judge Langston C. McKinney on May 3, 2007.  At that time, Plaintiff

---

[6]     At some point in time (either immediately before or after the arrest), Plaintiff was told that the information regarding his weight and Social Security number was required because the music playing in his vehicle was in violation of the City Noise Ordinance.  Plaintiff responded that the "music wasn't on as to be heard outside his truck."

entered a plea of "not guilty" to the charges of having committed a violation of the City Noise

Ordinance and traffic ticket charging Plaintiff with failing to produce proof of insurance.

Both cases were adjourned to May 24, 2007, for a nonjury trial, at which time the case was

dismissed by Judge McKinney for failure of the People to prosecute, because neither Defendant

Officer was subpoenaed to appear at that proceeding.

Familiarity with the remaining undisputed material facts of this action, as set forth in the

Defendants' Rule 7.1 Statement, is assumed in this Decision and Order, which (again) is

intended primarily for review by the parties.  (*Id.*)

### C.    Defendants' Motion for Summary Judgment

#### 1.    Defendants' Motion

Generally, in support of their motion for summary judgment, Defendants assert the

following five arguments: (1) no admissible record evidence exists from which a rational fact

finder could conclude that Defendant Officers arrested Plaintiff because he is African American

and/or was present in a certain part of town and/or was driving a large SUV with chromed

wheels; (2) no admissible record evidence exists from which a rational fact finder could

conclude that Defendant City of Syracuse is subject to municipal liability under *Monell v. Dep't

of Social Servs.*, 436 U.S. 658 (1978), through any of the six ways alleged by Plaintiff in his

Amended Complaint; (3) in the alternative, it is undisputed that Defendant Officers possessed

probable cause to arrest Plaintiff under the circumstances, thus precluding his claim of false

arrest as a matter of law; (4) in the alternative, no admissible record evidence exists from which

a rational fact finder could conclude that Defendants searched Plaintiff's truck (or that they did

so without cause), thus precluding his claim of wrongful search as a matter of law; and (5) in the

alternative, it is undisputed that Defendant Officers are protected from liability as a matter of law

by the doctrine of qualified immunity.  (*See generally* Dkt. No. 18, Attach. 22 [Defs.' Memo. of Law].)

### 2.     Plaintiff's Response

Generally, in Plaintiff's response to Defendants' motion for summary judgment, he submits an "attorney affidavit" setting forth various legal arguments.  (*See generally* Dkt. No. 20.)  Under the Local Rules of Practice for this Court, an affidavit must contain factual and procedural background that is relevant to the motion, and may not contain legal arguments.  N.D.N.Y. L.R. 7.1(a)(2).[7]  Rather, legal arguments must be set forth in a memoranda of law.  N.D.N.Y. L.R. 7.1(a)(1).  Here, Plaintiff failed to submit a memorandum of law, even after being advised of that failure by the Court's docket clerk on November 15, 2011.  N.D.N.Y. L.R. 7.1(a)(1).

Under the circumstances, the Court finds that deeming the document filed by Plaintiff to constitute a "memorandum of law" would contravene both common sense and the Court's Local Rules.  In particular, the document filed by Plaintiff (1) is twice labeled "**<u>ATTORNEY AFFIDAVIT</u>**," (2) is formatted like an affidavit, complete with notarization, (3) does not

---

[7]     In addition, an affidavit must be based on the affiant's personal knowledge.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").  Here, Plaintiff's counsel does not show that he possess personal knowledge of the events giving rise to this action.  (Dkt. No. 20.)  Indeed, if Plaintiff's counsel did possess such personal knowledge, he would likely not be able to represent Plaintiff in this action, under New York Rules of Professional Conduct.  *See, supra,* note 4 of this Decision and Order.  For these reasons, the affidavit is insufficient to create an issue of fact for purposes of a motion for summary judgment.  *See Topliff v. Wal-Mart Stores East LP*, 04-CV-0297, 2007 WL 911891, at \*23 (N.D.N.Y. March 22, 2007) (Lowe, M.J.) ("An attorney's 'affidavit' is unable to create a question of fact for purposes of a motion for summary judgment where the attorney has no personal knowledge of any of the events giving rise to the action.");  N.D.N.Y. L.R. 7.1(a)(3) ("The record for purposes of [a motion for summary judgment] . . . does not . . . include attorney's affidavits.").

contain a table of contents (in violation of N.D.N.Y. 7.1[a][1]), and (4) is bereft of any legal

citations, except for one perfunctory citation to a case for a point of law that is non-responsive to

Defendants' legal arguments and barely relevant to any material issue in the action (also in

violation of Local Rule 7.1[a][1]).[8]

The requirement that a memorandum of law contain a table of contents is an important

one warranting enforcement, because it requires a party to separate and label its legal arguments,

and enables the Court to identify and evaluate those legal arguments.[9]  Similarly, the requirement

that a memorandum of law containing citations to legal authorities is an important one, assisting

the party's opponent in responding to the arguments, and assisting the Court in evaluating the

arguments and rendering a decision.[10]  Simply stated, under the circumstances, the Court need

---

[8]    *See, e.g., Clark v. New York State Electric & Gas Corp.*, 67 F. Supp.2d 63, 71
(N.D.N.Y. 1999) (McAvoy, C.J.) ("[T]he papers submitted by Plaintiff did not contain adequate
citations (citations were often missing entirely or did not contain specific page references) to . . .
supporting legal precedent . . .  [as required by Local Rule 7.1(a)(1)].").

[9]    *See U.S. v. Cafolla*, 12-CV-0127, 2012 WL 2469968, at *8 (N.D.N.Y. June 27,
2012) (Suddaby, J.) ("Plaintiff's newly entitled application does not satisfy the requirements of a
memorandum of law, most notably, the requirement that the memorandum of law (1) specify the
case law and/or regulations upon which the motion is based . . . and (2) contain a table of
contents."); *Eng'rs Joint Welfare Fund v. W. New York Contractors, Inc.*, 09-CV-0417, 2011
WL 167228, at *1, n.2 (N.D.N.Y. Jan. 19, 2011) (Suddaby, J.) ("Plaintiffs' memorandum of law
in support of their motion for reconsideration does not include a table of contents, which is
required under the Local Rules of Practice for this Court."), *accord, Cent. N.Y. Laborers' Health
and Welfare, Pensions, Annuity and Training Funds v. Five Star Construction Servs., Inc.*, 09-
CV-0509, 2011 WL 167236, at *1, n.2 (N.D.N.Y. Jan. 19, 2011).

[10]    *See Grassi v. Lockheed Martin Fed. Sys., Inc.*, 186 F.R.D. 277, at 278-79
(N.D.N.Y. 1999) (McAvoy, C.J.) ("[T]he consequences for failure to follow the Local Rules of
the Northern District of New York are clear in the above circumstances. . . .  I have no legal
argument from plaintiff that I can consider. . . .  Insofar as it may be argued that plaintiff's
attorney's affidavit is functionally equivalent to a memorandum of law, it is inadequate; there is
not a single citation to any statute or case decision. Indeed, plaintiff's attorney failed to set forth
the legal theory upon which plaintiff's claims are based."); *McKnight v. Dormitory Auth. of the
State of New York*, 189 F.R.D. 225, 227 (N.D.N.Y. 1999) (McAvoy, C.J.) ("[T]he papers
submitted by Plaintiff did not contain adequate citations (short citations should contain enough
information to identify the legal precedent cited) to supporting legal precedent [as required Local
Rule 7.1(a)(3)] . . . .").

not, and does not, consider the legal arguments contained in Plaintiff's "attorney affidavit."[11]

In any event, even if the Court were to consider the legal arguments contained in Plaintiff's "attorney affidavit," the Court would find that they fail to sufficiently respond to Defendants' five discrete legal arguments. For the sake of brevity, the Court will set aside the fact that the affidavit is riddled with sentence fragments, run-on sentences, typographical errors, and unanswered questions. More important is the fact that the few arguments cogently communicated by the affidavit are simply either nonsensical or immaterial in nature.

In particular, the affidavit asserts the following four arguments: (1) Defendants' motion must be "dismiss[ed]" because the affidavit of Defendant Fay, adduced by Defendants in support of their motion, contains four purported "contradiction[s]" (i.e.,testimony that Fay observed Plaintiff produce a valid license and vehicle registration, testimony that Fay arrested Plaintiff because he refused to provide the required information about his weight and Social Security number, testimony that Fay gave Plaintiff a Uniform Traffic Ticket along with the Appearance Ticket, the *absence* of any specific explanation of how Fay knew that Plaintiff's music could be heard more than 50 feet from the vehicle despite the fact that Fay swore that he "observed" that

---

[11]      *See Duttweiler v. Eagle Janitorial, Inc.*, 05-CV-0886, 2009 WL 5171834, at *3 (N.D.N.Y. Dec. 22, 2009) (Suddaby, J.) (striking affidavit of counsel because [1] it was not based on personal knowledge of events giving rise to action and [2] it contained legal argument); *accord,Duttweiler v. Eagle Janitorial, Inc.*, 05-CV-0886, 2009 WL 1606351, at *2-3 (N.D.N.Y. June 4, 2009) (Suddaby, J.), *Road Dawgs Motorcycle Club of the U.S., Inc. v. 'Cuse Road Dawgs, Inc.*, 679 F. Supp.2d 259, 281-82 & n.54 (N.D.N.Y. 2009) (Suddaby, J.); *Gonzalez v. N.Y.S. Dep't of Corr. Servs. Fishkill Corr. Facility*, 122 F. Supp.2d 335, 341 (N.D.N.Y. Nov.29, 2000) (McAvoy, J.) (striking affidavit, in part because it improperly contained legal argument in violation of Local Rule 7.1[a][2]); *Topliff v. Wal-Mart Stores East LP*, 04-CV-0297, 2007 WL 911891, at *23 (N.D.N.Y. March 22, 2007) (Lowe, M.J.) ("[T]o the extent that Plaintiff's counsel is attempting to present arguments in refutation of the arguments advanced by Defendant . . . , the place for those arguments is in Plaintiff's opposition memorandum of law. . . . The Court does not have the duty to search through the numerous documents filed by Plaintiff in search of Plaintiff's legal argument."); *cf. Ragona v. Wal-Mart Stores, Inc*., 62 F. Supp.2d 665, 667 (N.D.N.Y. July 26, 1999) (McAvoy, C.J.) ("[T]he attorney's affidavit improperly contains legal argument in support of defendant's motion for judgment as a matter of law.").

fact); (2) the fact that the assistant district attorney later failed to prosecute Plaintiff for violating

the noise ordinance, and the fact that Plaintiff was not charged with "obstructing a government

investigation" or resisting arrest, demonstrate that Plaintiff was falsely arrested for violating the

noise ordinance; (3) the fact that defense counsel in his memorandum of law argued that

Defendant Officers handcuffed Plaintiff for the safety of Plaintiff and others, indicated that

(according to police department policies) a warrant check is to be made before the issuance of

the Appearance Ticket, and argued that an arresting officer's actual motivation in conducting the

arrest is irrelevant to whether probable cause existed for the arrest, negates the application of

qualified immunity; and (4) according to a New York State Court of Appeals case, respondeat

superior liability is the most effective means of deterring police misconduct.  (Dkt. No. 20.)

### 3.    Defendants' Reply

Generally in their reply, Defendants respond to the legal arguments asserted in Plaintiff's

"attorney affidavit."  (Dkt. No. 22.)  However, like Plaintiff, Defendants assert those legal

arguments in an attorney "declaration."  (*Id*.)  For the same reasons that the Court need not and

does not consider the legal arguments contained in Plaintiff's "attorney affidavit," the Court need

not and does not consider the legal arguments contained in Defendants' attorney "declaration."

*See, supra,* Part I.C.2. of this Decision and Order.

The Court would add only that, because it describes the unmerited arguments contained

in Plaintiff's "attorney affidavit" as an alternative ground for rejecting them, the Court finds it

appropriate to also briefly describe the arguments contained Defendants' attorney "declaration"

as a second alternative ground for rejecting Plaintiff's arguments.  In particular, in their reply,

Defendants assert the following five arguments: (1) Plaintiff failed to submit a response to their

Statement of Material Facts; (2) Defendants have adduced undisputed admissible record

evidence establishing how Defendant Fay knew that Plaintiff's music could be heard more than

50 feet from the vehicle; (3) based on the undisputed admissible record evidence, Defendant

Officers needed Plaintiff's weight and Social Security number to complete the Appearance

Ticket; (4) it is undisputed that Plaintiff refused to provide the information in question, and was

arrested and handcuffed until he provided the information that Defendants Officers needed to

comply with the law; and (5) the second, third and fourth above-described legal arguments

asserted by Plaintiff are entirely conclusory.  (Dkt. No. 22, at ¶¶ 6-13.)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(a).  In determining whether a genuine issue of material fact

exists, the Court must resolve all ambiguities and draw all reasonable inferences against the

moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In addition, "[the

moving party] bears the initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the

absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986);

*see also* Fed. R. Civ. P. 56(c), (e).  However, when the moving party has met this initial

responsibility, the nonmoving party must come forward with specific facts showing a genuine

dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury

could return a verdict for the novmoving party." *Anderson*, 477 U.S. at 248.  As a result,

"[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine

issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]; *see

also* Fed. R. Civ. P. 56(e)(2).  As the Supreme Court has famously explained, "[The nonmoving

party] must do more than simply show that there is some metaphysical doubt as to the material facts" [citations omitted]. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. [citation omitted]. Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party willfully fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute. For this reason, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a moving party's statement to have been admitted where the nonmoving party has failed to properly respond to that statement.[12]

### B.   Legal Standards Governing Plaintiff's Claims

Plaintiff's claims arise under a federal civil rights law that provides a remedy for individuals who have been deprived of their federal statutory or constitutional rights under color of state law. In particular, 42 U.S.C. § 1983, the statute upon which the Plaintiff relies for his claims, provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, [or] regulation . . . of any State . . . , subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. Generally, to establish a claim under § 1983, a plaintiff must establish, by a

---

[12]      Among other things, Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

preponderance of the evidence, each of the following three things: (1) the defendant was acting under color of state law; (2) the defendant's conduct deprived the plaintiff of a federal right, that is, a right secured by the Constitution or federal statute; and (3) the defendant's conduct caused an injury to the plaintiff. *See O'Neil v. Bebee*, 09-CV-1133, 2010 WL 502948, at *5 (N.D.N.Y. Feb. 10, 2010) (Suddaby, J.) (citing *Dwares v. City of New York*, 985 F.2d 94, 98 [2d Cir. 1993]).

### 1.      Claim of False Arrest

To establish that the defendant violated the Fourth Amendment by falsely arresting him, the plaintiff must establish, by a preponderance of the evidence, each of the following four things: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged. *Ahern v. City of Syracuse*, 411 F. Supp.2d 132, 146 (N.D.N.Y.2006) (Munson, J.).

Because of the fourth above-described element, "the existence of probable cause to arrest ... is a complete defense to an action for false arrest." *Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir.2001). When an arrest is made without a warrant and probable cause is raised as a defense, the government bears the burden to demonstrate the existence of probable cause. *Wu v. City of New York*, 934 F. Supp. 581, 586 (S.D.N.Y.1996).

Probable cause to arrest is present when law enforcement officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir.1999); *see also* N.Y.Crim. Proc. § 140.10(1)(a) (McKinney 2004). In evaluating the probable cause determination, the court "consider[s] the facts available to the officer at the time of the arrest"

and the conclusions those facts reasonably support. *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir.1997); *see also* N.Y.Crim. Proc. § 70.10(2) (McKinney 2004). The inquiry is an objective one and the subjective beliefs or motivations of the arresting officer are irrelevant. *Whren v. United States*, 517 U.S. 806 (1996). "In fact, the eventual disposition of the criminal charges is irrelevant to the probable cause determination." *Hahn v. County of Otsego*, 820 F. Supp. 54, 55 (N.D.N.Y. 1993) (Hurd, M.J.). Finally, "a claim for false arrest turns only on whether probable cause existed to arrest a defendant[;] ... it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir.2006). "Stated differently, when faced with a claim for false arrest," this Court must "focus on the validity of the arrest and not on the validity of each charge." *Jaegly*, 439 F.3d at 154.

### 2. Claim of Wrongful Search

Generally, to establish that the defendant violated the Fourth Amendment by subjecting Plaintiff to a wrongful search, the plaintiff must establish, by a preponderance of the evidence, that there has been an (1) intrusion by the state upon (2) the plaintiff's reasonable or legitimate interest in privacy. *See Burke v. Cicero Police Dep't*, 07-CV-0624, 2010 WL 1235411, at *6 (N.D.N.Y. March 31, 2010) (Scullin, J.); *DeVittorio v. Hall*, 589 F. Supp.2d 247, 256-57 (S.D.N.Y. 2008); *Conradt v. NBC Univ., Inc.*, 536 F. Supp.2d 380, 389-90 (S.D.N.Y. 2008); *Ruggia v. Kozak*, 05-CV-0217, 2008 WL 541290, at *8-12 (N.D.N.Y. Feb. 25, 2008) (Report-Recommendation of Lowe, M.J., adopted by Kahn, J.).

### 3. Claim of Municipal Liability

Finally, to establish that a municipality is liable for either such violation under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), the plaintiff must establish, by a preponderance of the evidence, one of the following four things: (1) a formal policy officially endorsed by the

municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a "custom or usage" sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to "deliberate indifference" to the rights of those who come in contact with the municipal employees.[13]

It should be noted that, "[t]o establish that the policymaker took action or constructively acquiesced to an unlawful practice, a plaintiff must show that the policymaking official 'had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was obvious, . . . and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction.'" *Bradley v. City of New York*, 08-CV-1106, 2009 WL 1703237, at *2 (E.D.N.Y. June 18, 2009) (citation omitted).  Moreover, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which can be attributed to a municipal policymaker." *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985).[14]

---

[13]     *Dorsett-Felicelli, Inc.*, 371 F. Supp.2d 183, 194 (N.D.N.Y. 2005) (Kahn, J.) (citing three Supreme Court cases for these four ways), *accord*, *Dunbar v. County of Saratoga*, 358 F. Supp.2d 115, 133-134 (N.D.N.Y. 2005) (Munson, J.); *see also Clayton v. City of Kingston*, 44 F. Supp.2d 177, 183 (N.D.N.Y. 1999) (McAvoy, J.) (transposing order of second and third ways, and citing five more Supreme Court cases).

[14]     *See also Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993) ("[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury. A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy."); *Sarus v. Rotundo*, 831 F.2d 397, 402 (2d Cir.1987) ("[A]bsent more evidence of supervisory indifference ... a policy may not ordinarily be inferred from a single incident of illegality."); *Fiacco v. City of Rensselaer, N.Y.*,

**C.    Legal Standard Governing Defense of Qualified Immunity**

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendants' alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir.1986) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 815 [1982]).  As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation;" and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted."  *Sira v. Morton*, 380 F.3d 57, 68–69 (2d Cir.2004) [citations omitted], *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir.2007) [citations omitted].

In determining the second issue (i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity';
> (2) whether the decisional law of the Supreme Court and the applicable
> circuit court support the existence of the right in question; and (3) whether
> under preexisting law a reasonable defendant official would have
> understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir.1991) [citations omitted], *cert. denied*, 503 U.S.

---

783 F.2d 319, 327 (2d Cir.1986) ("Since the existence of a policy of nonsupervision amounting to deliberate indifference to constitutional rights cannot be established by inference solely from evidence of the occurrence of the incident in question, ... a plaintiff cannot prevail on a § 1983 claim against a municipality without introducing other evidence ."); *Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir.1980) ("We agree that, absent more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct, a policy could not ordinarily be inferred from a single incident of illegality ....").

962 (1992).[15]  "As the third part of the test provides, even where the law is 'clearly established'

and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity

defense also protects an official if it was 'objectively reasonable' for him at the time of the

challenged action to believe his acts were lawful."  *Higazy v. Templeton*, 505 F.3d 161, 169–70

(2d Cir.2007) [citations omitted].[16]  This "objective reasonableness" part of the test is met if

"officers of reasonable competence could disagree on [the legality of defendants' actions]."

*Malley v. Briggs*, 475 U.S. 335 (1986).[17]  As the Supreme Court has explained:

> [T]he qualified immunity defense ... provides ample protection to all but the
> plainly incompetent or those who knowingly violate the law.... Defendants will
> not be immune if, on an objective basis, it is obvious that no reasonably
> competent officer would have concluded that a warrant should issue; but if
> officers of reasonable competence could disagree on this issue, immunity should
> be recognized.

---

[15]  *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson*, 179
F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer*, 124 F.3d 92, 97 (2d Cir.1996); *Shechter v.
Comptroller of City of New York*, 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips*, 66 F.3d
470, 476 (2d Cir.1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17–18 (2d Cir.1994); *Calhoun v.
New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir.1993).

[16]  *See also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("[W]hether an official
protected by qualified immunity may be held personally liable for an allegedly unlawful official
action generally turns on the 'objective reasonableness of the action.' ") [citation omitted]; *Davis
v. Scherer*, 468 U.S. 183 (1984) ("Even defendants who violate [clearly established]
constitutional rights enjoy a qualified immunity that protects them from liability for damages
unless it is further demonstrated that their conduct was unreasonable under the applicable
standard."); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects
defendants "even where the rights were clearly established, if it was objectively reasonable for
defendants to believe that their acts did not violate those rights").

[17]  *Accord*, *Malsh v. Correctional Officer Austin*, 901 F.Supp. 757, 764
(S.D.N.Y.1995) [citing cases]; *Ramirez v. Holmes*, 921 F.Supp. 204, 211 (S.D.N.Y.1996); *see
also Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir.2007) ("An officer's determination is
objectively reasonable if there was 'arguable' probable cause at the time of arrest-that is, if
'officers of reasonable competence could disagree on whether the probable cause test was met.'
") [internal quotations and other citations omitted].

*Malley*, 475 U.S. at 341.[18]

        **D.**       **Legal Standard Governing a Non-Movant's Failure to Oppose a Motion**

      In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1 n. 1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n. 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

**III.**    **ANALYSIS**

      Because adequate grounds exist on which to base the Court's dismissal of Plaintiff's Amended Complaint, the Court need not, and does not, analyze the first of the five arguments for dismissal asserted by Defendants in their memorandum of law (other than to succinctly report that the Court has come across no admissible evidence in the record establishing that Defendant Officers' conduct was motivated by race). *See, supra,* Part I.C.1. of this Decision and Order. Rather, the Court will analyze only the four remaining such arguments. *Id.*

---

     [18]     *See also Hunter v. Bryant*, 502 U.S. 224, 229 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

A.     **Whether Plaintiff's Claim of False Arrest Should Be Dismissed Because It Is Undisputed that Defendant Officers Possessed Probable Cause to Arrest Plaintiff Under the Circumstances**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 18, Attach. 22, at 20-23 [attaching pages "20" through "23" of Defs.' Memo. of Law].)  The Court would add only the following three brief points.

First, the Court finds that Plaintiff has failed to specifically oppose this argument in a memorandum of law.  *See, supra,* Part I.C.2. of this Decision and Order.  As a result, Defendants' burden with respect to the argument is lightened such that, in order to succeed on it, Defendants need show only that the argument possesses facial merit.  *See, supra,* Part II.D. of this Decision and Order.  The Court finds that Defendants have met this modest burden, again for the reasons stated in their memorandum of law.

Second, even if the Court were to subject Defendants' argument to the heightened scrutiny appropriate for a contested motion (thus taking into account Plaintiff's responsive arguments), the Court would still be persuaded by Defendants' argument, for the reasons stated in their memorandum of law *and* the reasons stated in their reply papers.  (Dkt. No. 22, at ¶¶ 8, 11, 12 [Defs.' Reply].)

Third, in addition to the points made by Defendants in their memorandum of law, the Court is persuaded by the fact that whether or not Defendants were authorized under New York State statute (much less a Syracuse Police Department policy) to only issue Plaintiff an appearance ticket for violating the City Noise Ordinance (rather than arresting him for that violation) is largely, if not entirely, irrelevant for purposes of a claim under 42 U.S.C. § 1983

20

and the Fourth Amendment.  *See Picciano v. McLoughlin*, 723 F. Supp.2d 491, 503-04

(N.D.N.Y. 2010) (Suddaby, J.) (relying, in part, on *Williams v. Schultz*, 06-CV-1104, 2008 WL

4635383, at *7-9 [N.D.N.Y. Oct. 16, 2008] [Lowe, M.J.]).  As indicated above in Part II.B., the

term "the Constitution and laws" in 42 U.S.C. § 1983 refers to United States Constitution and

federal laws.  *Picciano*, 723 F. Supp. at 504.  A violation of a state law, in and of itself, does not

give rise to liability under 42 U.S.C. § 1983.  *Id.*

 For each of these three alternative reasons, the Court dismisses Plaintiff's false arrest

claim.

>    **B.    Whether Plaintiff's Claim of Wrongful Search Should Be Dismissed Because
>           No Admissible Record Evidence Exists Establishing that Defendants
>           Searched Plaintiff's Truck (or that They Did So Without Cause)**

 After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 18, Attach. 22, at 20-23

[attaching pages "20" through "23" of Defs.' Memo. of Law].)  The Court would add only the

following two brief points.

 First, the Court finds that Plaintiff has failed to specifically oppose this argument in a

memorandum of law.  *See, supra,* Part I.C.2. of this Decision and Order.  As a result,

Defendants' burden with respect to the argument is lightened such that, in order to succeed on it,

Defendants need show only that the argument possesses facial merit.  *See, supra,* Part II.D. of

this Decision and Order.  The Court finds that Defendants have met this modest burden, again

for the reasons stated in their memorandum of law.

Second, even if the Court were to subject Defendants' argument to the heightened scrutiny appropriate for a contested motion (thus taking into account Plaintiff's responsive arguments), the Court would still be persuaded by Defendants' argument, again for the reasons stated in their memorandum of law.

Third, even if the Court were to find that admissible record evidence exists establishing that Defendant Officers searched Plaintiff's truck, the Court would find that any search of the passenger compartment (and any containers therein) that occurred was authorized under the circumstances.  In particular, although Plaintiff was handcuffed in the back of the patrol car at the time of any such search, his niece was not.  Rather, she was near the truck, exhibiting confrontational behavior, and causing an angry crowd to form at the scene.   As the Supreme Court explained in *Arizona v. Gant*, an officer is permitted to search a vehicle's passenger compartment "when he has reasonable suspicion that an individual, whether or not the arrestee, is dangerous and might access the vehicle to gain immediate control of weapons."  *Arizona v. Gant*, 556 U.S. 332, 346-47 (2009) (quotation marks omitted).

For each of these three alternative reasons, the Court dismisses Plaintiff's wrongful search claim.

**C.      Whether, in the Alternative, Plaintiff's Claims Against Defendant Officers Should Be Dismissed Because It Is Undisputed that They Are Protected from Liability as a Matter of Law by the Doctrine of Qualified Immunity**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 18, Attach. 20, at 14-20 [attaching pages "14" to "20" of Defs.' Memo. of Law].)  The Court would add only the following two brief points.

First, the Court finds that Plaintiff has failed to specifically oppose this argument in a memorandum of law. *See, supra,* Part I.C.2. of this Decision and Order.[19]  As a result, Defendants' burden with respect to the argument is lightened such that, in order to succeed on it, Defendants need show only that the argument possesses facial merit. *See, supra,* Part II.D. of this Decision and Order.  The Court finds that Defendants have met this modest burden, again for the reasons stated in their memorandum of law.

Second, even if the Court were to subject Defendants' argument to the heightened scrutiny appropriate for a contested motion (thus taking into account Plaintiff's responsive arguments), the Court would still be persuaded by Defendants' argument, again for the reasons stated in their memorandum of law.

For each of these two reasons, the Court dismisses Plaintiff's claims against Defendant officers on the alternative ground of qualified immunity.

D.   **Whether, in the Alternative, Plaintiff's Claims Against Defendant City of Syracuse Should Be Dismissed Because No Admissible Record Evidence Exists Establishing that Defendant City of Syracuse Is Subject to Municipal Liability Under *Monell***

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 18, Attach. 20, at 7-13 [attaching pages "7" through "13" of Defs.' Memo. of Law].)  The Court would add only the

_____

[19]      Even if the Court were inclined to treat Plaintiff's "attorney affidavit" as a memorandum of law (which it declines to do), that attorney affidavit merely argues that, "[a]s such it is Plaintiff's position that the Defendant Officers did not avail themselves of the defense of qualified immunity."  (Dkt. No. 20, at ¶ 5.)  The problem is that the rationale from which this conclusion is drawn is the fact that defense counsel argued that Defendant Officers arrested and handcuffed Plaintiff for the safety of Plaintiff and the Officers: the rationale in no way addresses Defendants' argument that, based on the specific record evidence described by Defendants, and the nature of the Noise Ordinance, it was certainly objectively reasonable for Defendant Officers to believe that their actions did not violate any law.  (Dkt. No. 18, Attach. 20, at 16-20 [attaching pages "16" to "20" of Defs.' Memo. of Law].)

following three brief points.

First, the Court finds that Plaintiff has failed to specifically oppose this argument in a memorandum of law.  *See, supra,* Part I.C.2. of this Decision and Order.[20]  As a result, Defendants' burden with respect to the argument is lightened such that, in order to succeed on it, Defendants need show only that the argument possesses facial merit.  *See, supra,* Part II.D. of this Decision and Order.  The Court finds that Defendants have met this modest burden, again for the reasons stated in their memorandum of law.

Second, even if the Court were to subject Defendants' argument to the heightened scrutiny appropriate for a contested motion (thus taking into account Plaintiff's responsive arguments), the Court would still be persuaded by Defendants' argument, for the reasons stated in their memorandum of law *and* the reasons stated in their reply papers.  (Dkt. No. 22, at ¶ 12 [Defs.' Reply].)

Third, and finally, in addition to the points made by Defendants in their memoranda of law, the Court is persuaded by the fact that there occurred no underlying constitutional violation that Defendant City of Syracuse could be deemed to have caused through (1) a formal policy officially endorsed by the City of Syracuse, (2) actions taken by officials responsible for establishing City Police Department policies related to the particular deprivation alleged, (3) a practice so consistent and widespread in the City Police Department that it constitutes a "custom

---

[20]     Even if the Court were inclined to treat Plaintiff's "attorney affidavit" as a memorandum of law (which it declines to do), that attorney affidavit merely argues that, according to a New York State Court of Appeals case, respondeat superior liability is the most effective means of deterring police misconduct.  (Dkt. No. 20, at ¶ 6.)  That argument does not address Defendants' detailed argument regarding why no admissible record evidence exists from which a rational fact finder could conclude that Defendant City of Syracuse is subject to municipal liability under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), through any of the six ways alleged by Plaintiff in his Amended Complaint.  (Dkt. No. 18, Attach. 20, at 7-13 [attaching pages "7" to "13" of Defs.' Memo. of Law].)

or usage" sufficient to impute constructive knowledge to the practice of policymaking officials, or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to "deliberate indifference" to the rights of those who come in contact with City Police Officers.

For each of these three alternative reasons, the Court dismisses Plaintiff's claims against Defendant City of Syracuse.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 18) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 11) is **<u>DISMISSED</u>**.

The clerk is directed to enter judgment in favor of the defendants and close this case.

Dated: September 12, 2012
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge